UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-CV-00054

| | | |
|---|---|---|
| MYRA JOHNSON, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| SPRINT SOLUTIONS, INC., | ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** is before the Court upon Defendant's "Motion to Dismiss" (Document #20). Defendant contend that Plaintiff's claim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED.

**I. BACKGROUND**

Since at least 2005, Defendant Sprint Solutions, Inc. ("Sprint") has offered a series of contractual national rate plans known collectively as the "Sprint PCS Fair and Flexible Plans." Plaintiff Myra Johnson ("Johnson") contracted with Defendant for this plan in March, 2005 (the "Contract"). The Contract consists of i) the Sprint PCS Service Plans Guide (including the Sprint PCS Coverage Guide), ii) Sprint's most recent Terms and Conditions, iii) the PCS Advantage Agreement in the form of a cash register receipt provided to customers at the point of sale, and iv) any other printed materials made available to the customer at Sprint's store.

Within the Sprint PCS Coverage Guide, Sprint provides national and regional maps that divide the United States into five geographic categories. These categories demonstrate the areas where Sprint may charge customers, using the Fair and Flexible Plan, roaming fees and where it may not. Two categories, the "Sprint Nationwide PCS Network" and "Additional Sprint PCS Service" (collectively the "Home Area"), reflect the area where a customer may make or receive telephone calls without incurring roaming charges. In Johnson's complaint Two other categories, "off-Network Digital Roaming" and "Off-Network Analog Roaming," reflect the areas where Sprint may charge roaming fees for calls made or received. Finally, the "No Service Available" category indicates where a customer could not make or receive calls at all. The Coverage Guide goes on to state that maps "show approximate service areas" of coverage and coverage "isn't available everywhere and may not be available in all areas shown on these maps."

Johnson alleges that Sprint breached the Contract with Johnson when Sprint was unable to determine a customer's physical location when calls were made or received, yet still charged plan holders for roaming fees. Johnson alleges that she was assessed roaming charges for telephone calls purportedly made or received both inside and outside of the "Home Area," which she paid. These allegations are supported by invoice exhibits filed in support of Johnson's complaint.

Sprint alleges that Johnson had full knowledge of the fact that she was being charged roaming fees for calls made within her "Home Area."

## II. DISCUSSION

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations

2

as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir.1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face," id. at 1974. But "allegations must be stated in terms that are neither vague nor conclusory." Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 220-221 (4th Cir. 1994).

### A. Voluntary Payment Doctrine

The North Carolina court system continues to recognize that "voluntary payment of money by a person who has full knowledge of all the facts cannot be recovered." Guerry v. American Trust Co., 68 S.E.2d 272, 274 (N.C. 1951); see also Collins v. Covert, 98 S.E.2d 26, 29 (N.C. 1957) (finding the viability of the voluntary payment doctrine); Shelton v. Duke Univ. Health Sys., Inc., 2005 WL 6013159 at *5 (N.C. Sup. Ct. 2005) (granting motion to dismiss while acknowledging the voluntary payment doctrine). While the use of the voluntary payment doctrine may be regarded as an affirmative defense, "a motion under Rule 12(b)(6) should...be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint." Hobbs v. Schneider Nat'l Carriers, Inc., 793 F. Supp. 660, 662 (W.D.N.C. 1992).

While the Court must accept as true all well pleaded allegations, any perceived conflict "between bare allegations of the complaint and any exhibit attached [to the complaint]... the

3

exhibit prevails." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). If a payment is made in ignorance or mistake of fact where the means of knowledge or information is in reach of the paying party but the party neglects to obtain it, there can be no recovery. Brummit v. McGuire, 12 S.E. 191, 193 (N.C. 1890).

Here, Johnson acknowledges she received and "paid" invoices where she was "assessed roaming charges for telephone calls purportedly made or received both inside and outside the Home Area." The issue before the Court is whether Johnson had "full knowledge" of the roaming charge calculations when she voluntarily paid the invoices.

Johnson alleges that Sprint misrepresented their system for calculating roaming charges. Specifically, Johnson asserts that Sprint, through its Coverage Guide, "represented that roaming charges were a geographic function based upon the customers' physical locations at the time calls were made or received" and "represented to customers that it had the ability to determine the customer's geographic location" while "conceal[ing] its total inability to determine the location of subscribers for billing purposes." However, exhibits offered in support of Johnson's complaint demonstrate the explicit lack of "geographic" language. The Terms and Conditions of the Sprint Contract specifically state, "You are roaming anytime your phone indicates that you are roaming...Depending on your phone settings, you may automatically roam if there is a gap or interruption in coverage within the Sprint Nationwide PCS Network coverage area and roaming coverage areas." Furthermore, the Coverage Guide states that the coverage maps listed in the Guide:

> show approximate service areas for outdoor coverage. They're based on computer generated radio-frequency projections and information from third parties but don't guarantee service availability. Actual coverage and the quality and availability of

4

> coverage can vary according to network problems, signal strength, your equipment, terrain, structures, weather and other limitations or conditions. Coverage isn't available everywhere and may not be available in all areas shown on these maps.

Compl. Ex. B at 1. Finally, invoices submitted in support of Johnson's complaint contains a specific section entitled "Roaming While in Charlotte." Under Johnson's reading of the coverage maps, Charlotte is an area wholly within the "Home Area" and allegedly exempt from roaming charges.

Johnson was provided with the Terms and Conditions of the Contract, the Coverage Guide and the Service Plan Guide at or before entering into the phone contract with Sprint. Each of these exhibits explicitly states that Sprint has a digital network that can only approximate the coverage and roaming areas. In addition, monthly invoices sent to Johnson provide a detailed record of the roaming charges. One section of the invoice is specifically devoted to roaming charges on calls made while in Charlotte, N.C. Charlotte was a coverage area that Johnson knew to be wholly within the "Home Area." Regardless of Johnson's knowledge of Sprint's coverage network when signing the Contract, she became fully informed of the roaming charges when she received an invoice with Charlotte roaming charges and paid it. By continuing to pay the invoices despite the knowledge that she was being charged for roaming calls that she did not think were correct, Johnson subjects herself to the voluntary payment doctrine.

The Complaint, on its face, along with the exhibits filed in support of the Complaint give rise to Sprint's claim of voluntary payment. Johnson had the opportunity to review Sprint's information in order to fully comprehend the roaming charges she was contracting to pay.

5

### B. Negligent Misrepresentation

In order to state a viable claim in tort for conduct that is alleged to breach a contract, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F.Supp. 350, 362 (W.D.N.C. 1997). This "independent duty" exception has been "carefully circumscribed by state law." Strum v. Exxon Co., USA, 15 F.3d 327, 331 (4th Cir. 1994). The independent tort must be identifiable and "the tortious conduct must have an aggravating element such as malice or recklessness." Strum, 15 F.3d at 331.

The economic loss doctrine stands for the general rule that "ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." Carolina Ports Authority v. Lloyd A. Fry Roofing, Co., 294 N.C. 73, 81 (1978). The Fourth Circuit clarified the application of the economic loss doctrine in Broussard v. Meineke Discount Muffler Shops, Inc. 155 F.3d 331 (4th Cir. 1998). There, the court applied the economic loss doctrine to claims of negligence arising out of the performance of a contract, restricting claims of negligence to the type of distinct circumstances necessary to allege an independent tort. Broussard, 155 F.3d at 347.

The case at hand is similar to two other cases decided in this district. In Mecklenburg Cnty. v. Nortel Gov't Solutions, Inc., the plaintiff brought claims of breach of contract, unfair and deceptive trade practices, and negligent misrepresentation against the defendant. 2008 WL 906319 at *4 (W.D.N.C. 2008). The plaintiff alleges the defendant misrepresented the delivery, completion of acceptance testing, implementation and go-live dates for defendant's complete product. Mecklenburg Cnty., 2008 WL 906319 at *5. This Court found the statements by the

6

defendant, addressing the level of preparation and functional readiness of their product, directly related to the defendant's performance of the contract. Id. These statements are at the heart of plaintiff's contractual claim. Id. This Court held that the claims of negligent misrepresentation and unfair trade practices fail to sufficiently allege identifiable and distinct facts, apart from the breach of contract claims, to overcome the North Carolina economic loss doctrine. Id. at *4.

In US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp., the plaintiff filed a claim for breach of contract and the defendant filed counterclaims of fraud and negligent misrepresentation. 2006 WL 1367383 (W.D.N.C. 2006). Plaintiff and defendant entered into an agreement where the defendant would not charge the plaintiff for wireless-originated toll free calls. US LEC Commc'ns, Inc., 2006 WL 1367383 at *2. The defendant claims that plaintiff's invoices did not identify the charges as charges for wireless-originated toll free calls but instead described the charges as though they were from landline callers. Id. The defendant alleges that it was deceived into paying charges that were not owed. Id. This Court found no allegation in defendant's claim that creates a separate and independent duty owed by plaintiffs outside the contractual relationship. Id. This Court held that defendant's fraud and negligent misrepresentation claims were premised on the same facts as its breach of contract claims, defendant's violation of an agreement not to charge plaintiff for wireless-originated toll free calls. Id. This Court dismissed the defendant's counterclaim for failure to allege an independent duty. Id.

Here, like the defendant in US LEC Commc'ns, Inc., Johnson bases her claim of negligent misrepresentation on Sprint's alleged assurances not to charge for certain roaming charges when entering into a contract. In Johnson's breach of contract and negligent

7

misrepresentation claims, she alleges that Sprint stated that roaming charges would be based on Johnson's geographic location when making and receiving calls. Johnson uses these same set of alleged facts to support her claim of negligent representation and identifies no independent duty Sprint owed to her. However, like the plaintiff in <u>Mecklenburg Cnty.</u>, Johnson fails to present any identifiable and distinct fact, wholly separate from her breach of contract claim, to overcome the North Carolina economic loss doctrine.

### C. Unjust Enrichment

Unjust enrichment is an equitable claim in which the court implies a quasi-contract in the absence of an actual agreement between the parties and permits a plaintiff to bring an action in restitution to recover the amount of the benefit conferred on the defendant. <u>Booe v. Shadrick</u>, 369 S.E.2d 554, 555-56. If there is a contract between the parties, the contract governs the claim and the law will not imply a contract. <u>Booe</u>, 369 S.E.2d at 556.

Here, Johnson admits that there is a contract between herself and Sprint in the Complaint (Compl. ¶ 61). Given the existence of an actual contract, this Court will refuse to recognize the existence of a quasi-contract.

For these reasons, Defendant's Motion to Dismiss the all of Plaintiff's claims is hereby GRANTED.

IT IS SO ORDERED.

Signed: July 29, 2008

Graham C. Mullen
United States District Judge